Daniel Loyd McClellan was convicted for receiving stolen property in the second degree and was sentenced to imprisonment for life as a habitual offender. He raises three issues on this direct appeal from that conviction.
 I.
The trial court acted within its discretion in denying the appellant's request for a continuance of his trial to obtain the presence of a missing witness.
The significant dates are as follows:
June 1991: The appellant was arraigned.
 May 8, 1992: The appellant filed a motion to dismiss, claiming that he had been denied his right to a speedy trial. C.R. 18.
 May 14, 1992: The appellant filed a motion for a continuance on the ground that the appellant "has recently underwent gall bladder surgery." C.R. 20.
 June 2, 1992: The entry on the case action summary for this date states: "Motion to dismiss denied as this case was continued for Defendant last term. Case to be set on next term of court. No continuances will be allowed." C.R. 2. On this same date new counsel was appointed to represent the appellant.
 June 4, 1992: Newly appointed counsel filed a motion for a continuance asserting that he had not had sufficient time to investigate and prepare his case. C.R. 26.
 June 5, 1992: The case action summary entry for this date states: "Upon Hon. Spencer just being appointed on case, Defendant's Motion to Continue is granted. This case is ordered placed first on the July Trial Docket." C.R. 2.
 July 14, 1992: The appellant filed a third motion for a continuance. That motion alleged that "Sylvester Griffin, one of the defense witnesses . . ., is serving in the Army Reserves and is presently away in Summer Camp and will not return until after" the scheduled trial date of July 27, 1992. C.R. 31.
 July 30, 1992: The appellant's third motion for a continuance was granted. C.R. 2.
 September 15, 1992: The appellant filed a fourth motion for a continuance. That motion alleged that the appellant's trial was scheduled for September 15, 1992, and that "Paul Winterman, Investigator for Panama City Police Department, a vital witness for the defense, is out of town in Colorado and will not return until September 28, 1992." C.R. 35. In arguing this motion, defense counsel asserted that Winterman was on "extended vacation." R. 9.
 September 16, 1992: The appellant's fourth motion for a continuance was denied and his trial began. He was convicted on September 17, 1992.
The appellant was charged with the receipt of 13 firearms, two walkie talkies, and one rifle scope all of which had been stolen from Richard Money. The appellant's defense was that he was working with the police in Panama City, Florida, as an informant and that he intended to take the stolen property, which was seized from the trunk of the automobile in which the appellant was riding, to the Panama City police. The appellant *Page 1028 
claimed that Paul Winterman, an investigator for the Panama City Police Department, was the primary investigator regarding this property.
However, in his statements made after his arrest in Alabama, the appellant told the deputies from the Houston County Sheriff's Office that he was working as part of an undercover operation for Frank McKeithen, a captain with the Bay County Sheriff's Department in Panama City, Florida. At trial, Captain McKeithen admitted that the appellant had been one of his informants but denied any knowledge of the alleged undercover operation the appellant claimed to have been involved in. The appellant did not mention Winterman in any of the several statements that he made after his arrest.
There was no motion for a new trial. Although it appears that Winterman had given prior testimony in connection with this case and that that testimony had been transcribed (R. 12), that testimony was not presented to the trial court and it is not contained in the record on appeal.
 "The grant or denial of a continuance is within the trial court's discretion, but the court's discretion is not without limits. Scullin v. Cameron, 518 So.2d 695 (Ala. 1987); Mitchell v. Moore, 406 So.2d 347 (Ala. 1981); Ex parte Driver, 258 Ala. 233, 62 So.2d 241 (1952). On appeal, the trial court's refusal to grant a continuance will not be disturbed unless there is a showing of an abuse of discretion. Selby v. Money, 403 So.2d 218 (Ala. 1981); Perdue v. Mitchell, 373 So.2d 650
(Ala. 1979). See also Steele v. Gill, 283 Ala. 364, 217 So.2d 75 (1968).
 "This Court has held that the mere unavailability of a witness does not require that the trial court grant a continuance. Spence v. Baldwin County Sav. Loan Ass'n, 533 So.2d 192
(Ala. 1988); Perdue v. Mitchell, supra. However, we have set out the following 'guidelines for determining whether the absence of a witness warrants a continuance':
 " 'It must be shown that the expected evidence will be material and competent; there must be the probability that the testimony can be obtained at a future date to which the cause may be continued or postponed; due diligence must have been exercised by the movant to secure the absent witness or evidence; the expected evidence must be credible and will probably affect the result of the trial; it must not be merely cumulative or in the nature of impeachment; and the motion for continuance must not be made merely for purposes of delay.'
 "Mitchell v. Moore, supra, at 350-51. As further stated by this Court, '[e]ach case must be viewed in light of its peculiar circumstances.' Id. at 351."
Thompson v. Carraway Methodist Medical Center, 584 So.2d 481,483-84 (Ala. 1991). See also Ex parte Saranthus,501 So.2d 1256, 1257 (Ala. 1986).
Here, the motion for a continuance was properly denied because the appellant failed to make an adequate showing that Winterman's testimony was material and competent. In support of his motion for a continuance, defense counsel argued to the trial court that Winterman would testify that the appellant had returned a coin collection that "was part of the property." At trial, Houston County Sheriff's Deputy Joe Watson testified that "some coins and other stuff that came out of an additional burglary in Bay County were found, along with the weapons stolen from Money, in the trunk of the automobile in which the appellant was riding." R. 56 (emphasis added). Watson testified that the coins were "turned over to another investigator and Mark [Dufresne, with the Bay County Sheriff's Department,] turned them over to Paul Winterman who works for Panama City PD and he returned the stuff to that owner." R. 56. There was no evidence that the coins were a portion of the property stolen from Mr. Money.
Furthermore, there was no showing that the appellant exercised due diligence to secure Winterman's appearance at trial. Winterman had been subpoenaed by both the State and the defense each time the case was set for trial. Defense counsel stated that prior to the actual trial date Winterman had been subpoenaed before he discovered his absence: "The subpoenas had gone out. We were not even aware of the unavailability *Page 1029 
until [the prosecutor] and the State offered the information to us." R. 11. In denying the continuance, the trial judge stated: "There is a proper procedure to get him back from another state." R. 13-14. It does not appear that the appellant attempted to make use of the "Uniform Act to Secure the Attendance of Witnesses from Without a State in a Criminal Proceeding." See Ala. Code 1975, § 12-21-280 et seq.
 II.
The State presented substantial evidence of the appellant's guilt. The State proved that firearms valued at $3192.70 were found in the trunk of the automobile in which the appellant and Ronnie Kennedy were riding. The evidence also showed that the firearms had been stolen by Kennedy, who was the nephew of the appellant's fiance. After his arrest, the appellant insisted that he was attempting to return the stolen firearms to police in Florida and that he was an undercover informant working for Captain Frank McKeithen of the Bay County, Florida, Sheriff's Department. Captain McKeithen denied any such relationship and told the arresting officers to "put [the appellant's] ass in jail." R. 51-52.
The crime of receiving stolen property is defined as "intentionally receiv[ing], retain[ing] or dispos[ing] of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner." Ala. Code 1975, § 13A-8-16(a). "If a person . . . [p]ossesses goods or property which have been recently stolen . . . this shall be prima facie evidence that he has the requisite knowledge or belief [that the property was stolen]." Ala. Code 1975, § 13A-8-16(b). "The possession of recently stolen property by the accused places upon him the burden of explaining that possession to the satisfaction of the jury. . . . 'Whether the explanation offered is credible or satisfactory is a question for the jury.' " Carlisle v. State,465 So.2d 1205, 1206 (Ala.Cr.App. 1984) (citations omitted). "The reasonableness of the explanation given by one in possession of recently stolen property is to be determined from all of the circumstances, and, if reasonable people can come to a different conclusion on the subject, the question of whether the explanation is reasonable is one to be determined by the jury." Ford v. State, 383 So.2d 601, 603 (Ala.Cr.App. 1980).
 III.
The appellant argues that the statements he made to Houston County deputies after his arrest should not have been admitted into evidence because they were "in the nature of conversation about working a compromise with the State in return for undercover activity." Appellant's brief at 11.
In Franklin v. State, 621 So.2d 364 (Ala.Cr.App. 1992), after the appellant's residence had been searched and some cocaine discovered, the investigating officer asked the appellant if he would be willing to work for the police "setting up reverse drug buys, whereby the [defendant] would sell drugs to people, and the police would then arrest the purchasers." 621 So.2d at 365. The investigator told the defendant that if he would cooperate with the police, the investigator "would let it be known to the assistant district attorney in charge of [the defendant's] case, the extent of his cooperation, and that he would relay that to the judge at the time of sentencing for some hope of some consideration." Id. at 365. This Court held that the appellant's admissions to the investigating officer were coerced:
 "Applying the law governing the admissibility of extra-judicial confessions to the instant facts, we find that Investigator Cook's promise to let the appellant's cooperation be known to the assistant district attorney was coercive. Such a promise, made under these circumstances, would necessarily engender a hope of reward in the appellant's mind. Therefore, the statements he made in response should have been suppressed. In terms of public policy, it should be possible for an accused to talk about cooperating with the state in arresting other lawbreakers without having his conversation used against him to prove the crime of which he is accused." Id. at 367 (emphasis added). *Page 1030 
Our statement in Franklin, that "in terms of public policy, it should be possible for an accused to talk about cooperating with the state in arresting other lawbreakers without having his conversation used against him to prove the crime of which he is accused," is limited in scope and application to those situations where an interrogating officer specifically seeks the cooperation of the accused.
In Hereford v. State, 608 So.2d 439 (Ala.Cr.App. 1992), this Court held that a defendant's statement to a law enforcement officer during the course of a criminal investigation that he would pay for damages in order to avoid the hassle of a criminal prosecution should not have been admitted into evidence. " '[A]n offer to compromise a criminal case is not admissible against the accused as an admission.' . . . However, offers of compromise which contain 'an express admission of guilt' are admissible." Hereford, 608 So.2d at 443, 444.
This case is distinguishable from both Franklin and Hereford.
In this case, the appellant's alleged "offer of compromise" was no more than an explanation of his possession of the stolen property and an unsolicited offer to cooperate with the police regarding other criminal activity.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.